George F. **FLEMING**, Herman R. Guerrero, Josefa S. Guerrero, Herman Kintol, Pedro Lifoifoi, Ramon Matsunaga, Juan Sn. Pangelinan, Joaquin G. Sablan, and Manuel S. Villagomez

v.

The **UNITED STATES**.

No. 403–61.

United States Court of Claims.

Nov. 12, 1965.

Paul M. Rhodes, Washington, D. C., attorney of record, for plaintiffs. Finton J. Phelan, Jr., Agana, Guam, of counsel.

Bruno A. Ristau, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

Plaintiffs, citizens and permanent residents of Saipan, Mariana Islands, allege in this action that the United States Government has taken their property, i. e., trochus [1] shells, without just compensation in violation of the Fifth Amendment of the Constitution. Plaintiffs, therefore, claim compensation for the alleged taking.[2]

The Island of Saipan is a part of the Trust Territory of the Pacific Islands, and on the dates pertinent herein was governed and administered by the United States Navy, under Executive Order No. 10408 [3] on behalf of the United States, under a United Nations Trusteeship approved by Joint Resolution of Congress, dated July 18, 1947.[4] On June 6, 1956, the Naval Administrator of Saipan published the following notice:

To: All Permanent Residents of the Saipan District, Trust Territory of the Pacific Islands

1. It has come to the attention of the Naval Administrator that trochus shells of less than three (3) inches in diameter at the base have been taken in violation of Sections 771 and 774 of the Code of the Trust Territory of the Pacific Islands. The foregoing was confirmed by an investigation made jointly by LCDR Glenn A. Evans, Lt. William C. Ruddick and Mr. John P. Raker, all of Naval Administration Unit, Saipan.

2. All persons owning or possessing trochus shells of less than three (3) inches in diameter at the base are required to deliver such trochus shells to the Mayor of Saipan, Ignacio Benavente, or to his authorized representative, at the Mayor's office in Chalan Kanoa, on or before 12 June 1956. The Mayor or his authorized representative will weigh such trochus shells and issue receipts for such trochus shells so delivered. Such trochus shells will be sold by the Government and the proceeds thereof placed in the District Revenue Funds to be utilized for the direct benefit of the indigenous population.

3. Any person failing to deliver such illegal sized trochus shells as required by paragraph two (2) above, or anyone discovered to be in possession of illegal sized trochus shell after 12:00 noon, 12 June 1956 will be prosecuted under Sections 771 and 774 of the Code of the Trust Territory of the Pacific Islands.

4. The exportation from the Saipan District of trochus shells of less than three (3) inches in di-

---

1. Trochus shells, at the time of the alleged taking complained of by plaintiffs, had a commercial value for the making of mother of pearl buttons and ornaments.

2. These claims have already been the subject of protracted litigation. See footnote 1 of the Findings of Fact for a background of the procedural aspects of the case. The only issue presently before the

court relates to the plaintiffs' rights of recovery. The determination of the amounts of recovery, if any, has been reserved for further proceedings.

3. Dated November 10, 1952, 3 C.F.R. 1949–1953 Comp. p. 906, U.S.Code Congressional and Administrative News 1952, p. 1105.

4. 61 Stat. 397.

ameter at the base by anyone except the Government is and will be prohibited.[5]

The present plaintiffs were primarily merchants who did not dive for, or harvest the trochus shells, but instead purchased them for export from persons who gathered them. Plaintiffs had in their possession some 25,000 pounds of undersized trochus shells, i. e., shells with a diameter less than three inches at the base. As a result of the notice of June 6, 1956 plaintiffs delivered said undersized shells to a representative of the U.S. Naval Administration Unit. No force was used against plaintiffs in an effort to cause them to part with the shells. Plaintiffs surrendered the shells in the belief that if they did not do so, they would be prohibited from exporting the shells and further, that they would be subject to prosecution. The U.S. Naval Administration Unit thereafter exported and sold the shells to Japan. The proceeds from the sale of these undersized trochus shells were paid to the Treasurer of the Municipality of Saipan to be used for charitable purposes and for the benefit of local indigents.

Plaintiffs twice protested the confiscation of the trochus shells by the Naval Administration. By letter of June 27, 1956 they wrote the Naval Administrator, requesting that he reconsider his June 6 notice and not require a confiscation of the undersized shells. The letter also states in part:

It is deeply regretted that our acts of negligence resulted in a violation of the Trust Territory Code relating to the collection of trochus. May we invite your attention to the fact that we took for granted the collection of this size trochus was all right because of the practice of the past several years.

We now pledge ourselves that the collection of undersized trochus will not occur again.

The Naval Administrator replied to plaintiffs' letter, and rejected their request. In so doing, he stated in part:

You have given as a reason for requesting reconsideration "the fact that we took for granted the collection of this size trochus was all right because of the practice of the past several years." This allegation is not clear, as I have not knowingly permitted the illegal collection or sale of trochus. I have no authority to waive the provisions of the Trust Territory law, nor does any of my subordinates have such authority.

On 3 March 1956, a public notice was issued in the English, Chamorro, and Carolinian languages, over my signature. This notice established the trochus season and repeated the provisions of the Code of the Trust Territory which prohibits the

---

5. The sections above referred to of the Code of the Trust Territory of the Pacific Islands, sections 771 and 774, read as follows:

"SEC. 771. *Trochus season.* Each District Administrator may designate and vary from year to year, an open season or seasons during May and June for the harvesting of trochus in his district: Provided, that such open season or seasons shall not total more than fourteen (14) days in any year. Public notice shall be given of the dates designated for harvesting of trochus in each district by posting in each local-government office a copy of such designation in writing in the predominant native language of that local-government area and filing a copy of each designation with the Clerk of Courts. During such an open season, any permanant resident of the Trust Territory may dive for and harvest trochus in the district to which the season applies, within those areas in which he has the right to fish under established local custom, provided that no trochus shall be taken whose shell is less than three (3) inches in diameter at the base.

SEC. 774. *Penalties.* Any person violating the foregoing Sections pertaining to the harvesting of trochus shall, upon conviction thereof, be imprisoned for a period not exceeding six (6) months or fined not more than one hundred dollars ($100), or both."

taking of trochus with a shell less than three inches in diameter. This notice was widely distributed and all of you were aware of its contents.

Even if there has been some undisclosed laxness in law enforcement in the past, the provisions of the above notice clearly state that no undersized trochus should be taken.

The second protest of the confiscation was made in 1960 through an attorney. In this protest plaintiffs for the first time alleged that the shells had not been illegally harvested, but instead, were dead shells that had been picked up on the beach after storms. The Commander-in-Chief of the U.S. Pacific Fleet rejected the protest and replied to plaintiffs on February 28, 1961. The Commander-in-Chief stated that there was no merit to plaintiffs' claim. Plaintiffs thereafter brought suit in this court, seeking just compensation for the confiscated trochus shells.

Plaintiffs rely upon two prior cases decided by this court, Dore et al. v. United States, 97 F.Supp. 239, 119 Ct.Cl. 560 (1951) and Arkansas Rice Growers Cooperative Association v. United States, 137 Ct.Cl. 442 (1957), in support of the proposition that plaintiffs' surrender of the shells constituted a taking by the Government. In both Dore and Arkansas Rice Growers, supra, plaintiffs were millers of rice who sued for just compensation for quantities of rice delivered to the Government pursuant to war regulations under compulsory set aside orders. Plaintiffs were paid low OPA ceiling prices, which caused plaintiffs to incur losses. The court held that such forced sales constituted takings by the Government, as it had not paid plaintiffs just compensation within the meaning of the Fifth Amendment. We do not believe these cases are applicable to the case at hand. In Dore and Arkansas Rice Growers, there was no doubt that the rice belonged to plaintiffs. They had legal title to the rice before they were forced to sell it. We do not believe that plaintiffs in the case now before us had any title in or right to possession of the trochus

shells. The shells, in fact, were contraband.

At the time in question here there was in effect in the Trust Territory a section of the local code which provided:

SEC. 22. *Common law applies except when* The Common Law of England and all Statutes of Parliament in aid thereof in force and effect on July 3, 1776, and as interpreted by American decisions, are declared to be the law of the Trust Territory of the Pacific Islands * * *

The common law to which we are thus referred has from the earliest time contained general rules concerning animals *ferae naturae*. Animals *ferae naturae*, i. e., wild animals, birds and fish in their natural state were not objects of private ownership. They belonged to all the people in their collective capacity. An individual could, however, become an owner of a wild animal if the animal were reduced to the possession of that individual. While these fundamental principles have undergone little or no change, the development of free institutions recognized the fact that the state as the sovereign and representative of the collective people had the authority to exercise power or control over animals *ferae naturae* as a trust for the benefit of a people. Implicit in this power was the right to regulate or absolutely prohibit the taking of, or traffic in, animals *ferae naturae*, if such action was deemed necessary for the protection or preservation of the public good. An excellent analysis and development of the common law in this area is contained in Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896).

This court, in Aleut Community of St. Paul Island v. United States, 117 F.Supp. 427, 431, 127 Ct.Cl. 328, 334 (1954), discussed the Geer case, supra, as follows:

\* \* \* \* \* \*

In that opinion Justice White discussed at length the rights of citizens in wild game. The substance of his discussion is that no private citizen or group of private citizens

has any property right in wild game to the exclusion of other citizens, but that they have the right to reduce it to possession, but no greater right to do so than other citizens, and that this right is subject to the undoubted power of the sovereign to regulate it or to absolutely control or forbid it.

In the present case, the harvesting of trochus with a shell base diameter of less than three inches was forbidden by law. The law was promulgated in accordance with the common law right to regulate or forbid the taking of animals *ferae naturae*. The shells here in question were harvested in violation of the law, and therefore, no property rights could be acquired in them by those who had gathered them. The shells were, in effect, contraband. Since plaintiffs were merchants long experienced in buying and selling trochus shells, we believe they must have had actual knowledge of the prohibition against the gathering of undersized shells. They have never alleged otherwise. Plaintiffs cannot, therefore, claim to be innocent purchasers.[6] The shells in their possession were, therefore, likewise contraband and subject to confiscation.[7]

Plaintiffs do contend that a past policy of the Naval Administrative Unit allowed trafficking in undersized shells. The Naval Administrator flatly denied this allegation. We hold that plaintiffs have not proven a policy contrary to the harvesting statute inasmuch as plaintiffs have presented only bare allegations by interested parties.

Plaintiffs have also contended that the shells were not harvested, but were found on the beach after storms. This allegation was not made until more than four years after the shells were turned over to the Navy. (See Finding 14). Just as

the Commander-in-Chief of the U.S. Pacific Fleet found this aspect of the claim to be without merit, so does this court. Plaintiffs are not entitled to recover, and the petition therefore is dismissed.

---

6. No inference should be drawn that had plaintiffs been innocent or bona fide purchasers they would have had good title or the right to possession.

7. Defendant has raised jurisdictional and constitutional issues in this case. We have found it unnecessary to pass on these issues.